**UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION AT DAYTON**

| | | |
|---|---|---|
| PEOPLETEC, INC., | : | |
| | : | |
| Plaintiff, | : | Case No. 3:25-cv-362 |
| | : | |
| v. | : | Judge Thomas M. Rose |
| | : | |
| SOLUTIONS THROUGH INNOVATIVE | : | Magistrate Judge Caroline H. Gentry |
| TECHNOLOGIES, INC., *et al.*, | : | |
| | : | |
| Defendants. | : | |
| | : | |
| | : | |

---

**ENTRY AND ORDER GRANTING DEFENDANT, CHARLES A. COLON, III,
MOTION FOR JUDGMENT ON THE PLEADINGS (DOC. NO. 26)**

---

Now before the Court is Defendant, Charles A. Colon, III, Motion for Judgment on the Pleadings (the "Motion") (Doc. No. 26). Plaintiff PeopleTec, Inc. ("PeopleTec") has instituted this action against Defendant Solutions Through Innovating Technologies, Inc. ("STI") for breach of contract, and against Defendant Charles A. Colon, III ("Colon") (together, the "Defendants"), under an alter-ego theory of liability. (*See* Doc. No. 5.) Colon seeks to remove himself from the fray, arguing that PeopleTec has failed to make sufficient allegations to pierce STI's corporate veil and consequently treat Defendants as indistinguishable from one another for purposes of liability under the contract at issue here. For the reasons set forth below, the Court **GRANTS** Colon's Motion.

## I.  BACKGROUND

This dispute concerns the prime/sub-prime relationship between two defense contractors. (*See* Doc. No. 5 at PageID 125-26.) At an unidentified date, but before August 31, 2020 (Doc.

1

No. 5-1 at PageID 131), STI allegedly secured a contract with the United States government "to provide certain satellite communications services to the U.S. Army Space and Missile Defense Command" from August 31, 2020, through August 31, 2025 (*id.*).  (Doc. No. 5 at PageID 125.)  It appears that, on October 21, 2020, PeopleTec and STI entered into a subcontracting agreement, whereby STI would take on the responsibilities of a prime contractor respecting the provision of satellite communications services and PeopleTec would perform as STI's subcontractor on the project.  (Doc. No. 5 at PageID 126; Doc. No. 5-1 at PageID 145.)  Based upon documents attached to PeopleTec's Complaint (Doc. No. 5), this subcontractor agreement between PeopleTec and STI was signed by STI's chief operating officer, Lista Williams, and PeopleTec's contract manager, Callie Bayless.  (Doc. No. 5-1 at PageID 145.)

After approximately four years of successful collaboration, problems between PeopleTec and STI allegedly rose to the fore in "late 2024."  (Doc. No. 5 at PageID 126.)  PeopleTec alleges that, despite the government's full funding of STI's prime contract, STI "became delinquent in paying PeopleTec starting in late 2024 and has never caught up."  (*Id.*)  PeopleTec allegedly communicated with STI regarding these delinquent payments on several occasions throughout late-2024 and 2025.  (*Id.*)  In particular, Colon—STI's chief executive officer and majority shareholder—represented that STI was formulating a plan to pay all past due invoices, to be presented to PeopleTec in June 2025.  (*Id.*)  When June came without a payment plan, Colon allegedly stated that "he was 'working on a solution to address the matter' and [STI] was 'committed to fulfilling [its] obligations under the contract.'"  (*Id.*)  In the end, Defendants allegedly never presented PeopleTec with a plan for satisfying the unpaid invoices and apparently Defendants stopped communicating with PeopleTec altogether after June of 2025.  (*Id.* at PageID

127.)  All the while, PeopleTec claims it continued to perform work for the U.S. military under its subcontractor agreement with STI.  (*Id.*)

PeopleTec brought its Complaint in this action on October 31, 2025, pursuant to a forum selection clause in its subcontractor agreement with STI.  (Doc. Nos. 1 & 5.)  Therein, PeopleTec has alleged a cause of action against STI for breach of contract, with damages to the tune of $1,630,610.19.  (Doc. No. 5 at PageID 127-28.)  PeopleTec has also alleged a second cause of action, or more accurately a theory of liability, against Colon.  (*Id.* at PageID 128.)  Specifically, PeopleTec seeks to pierce STI's corporate veil and hold Colon liable for STI's alleged debts to PeopleTec.  (*Id.* at PageID 128-29.)

Colon filed his current Motion on February 12, 2026 (Doc. No. 26), in an effort to dispose of PeopleTec's veil-piercing allegations against him.  PeopleTec lodged Plaintiff's Response in Opposition to Motion for Judgment on the Pleadings ("Response") (Doc. No. 27) on March 5, 2026, and Colon timely filed a reply in support of his Motion on March 16, 2026 (Doc. No. 28). The Court thus finds Colon's Motion to be ripe for review and decision.

## II.   <u>STANDARD OF REVIEW</u>

Motions for judgment on the pleadings pursuant to Fed. R. Civ. P 12(c) are reviewed under the same standard as motions to dismiss for failure to state a claim per Rule 12(b)(6).  *See Warrior Sports, Inc. v. Nat'l. Collegiate Athletic Ass'n*, 623 F.3d 281, 284 (6th Cir. 2010).  When considering a motion for judgment on the pleadings, "[a]ll well-pleaded material allegations of the pleadings of the opposing party must be taken as true, and the motion may be granted only if the moving party is nevertheless clearly entitled to judgment as a matter of law."  *Hindel v. Husted*, 875 F.3d 344, 346 (6th Cir. 2017) (internal quotation marks omitted).  However, the court "need

not accept as true legal conclusions or unwarranted factual inferences." *JPMorgan Case Bank, N.A. v. Winget*, 510 F.3d 577, 582 (6th Cir. 2007).

"To survive a Rule 12(c) motion, a complaint must contain direct or inferential allegations respecting all the material elements under some viable legal theory." *Hindel*, 875 F.3d at 346-347 (citing *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)) ("[A] complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face. A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." (internal quotation marks omitted)). "[T]he plaintiff must provide the grounds for its entitlement to relief, and that 'requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action.'" *Albrecht v. Treon*, 617 F.3d 890, 893 (6th Cir. 2010) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)) (internal citation omitted). "A plaintiff falls short if [the plaintiff] pleads facts 'merely consistent with a defendant's liability' or if the alleged facts do not 'permit the court to infer more than the mere possibility of misconduct.'" *Id.* (quoting *Iqbal*, 556 U.S. at 678-79); *see also Twombly*, 550 U.S. at 557 (a complaint will not withstand a motion to dismiss if it offers only "naked assertion[s]" without "further factual enhancement").

In reviewing motions for judgment on the pleadings, courts primarily consider the pleadings, which consist of the complaint, the answer, and any written instruments attached as exhibits. *See* Fed. R. Civ. P. 12(c); Fed. R. Civ. P. 7(a) (defining "pleadings" to include both the complaint and the answer); Fed. R. Civ P. 10(c) (stating that "[a] copy of a written instrument that is an exhibit to a pleading is part of the pleading for all purposes"). Though the allegations contained in the complaint are the primary focus, courts may also account for "matters of public record, orders, [and] items appearing in the record of the case." *Barany-Snyder v. Weiner*, 539

4

F.3d 327, 332 (6th Cir. 2008).  Additionally, courts may consider exhibits attached to a motion for judgment on the pleadings "so long as they are referred to in the Complaint and are central to the claims contained therein."  *Brent v. Wayne Cty. Dept. of Human Servs.*, 901 F.3d 656, 695 (6th Cir. 2018).

When deciding on a matter of law, "[a] federal court sitting in diversity must apply the substantive law . . . of the state in which it sits."  *Phelps v. McClellan*, 30 F.3d 658, 661 (6th Cir. 1994) (citing *Klaxon Co. v. Stenor Elec. Mfg. Co.*, 313 U.S. 487, 496, (1941)); *Clutter v. Johns-Manville Sales Corp.*, 646 F.2d 1151, 1153 (6th Cir. 1981).  To the extent that the state's highest court has not addressed the issue presented, the federal court must anticipate how the state's highest court would rule.  *Imperial Hotels Corp. v. Dore*, 257 F.3d 615, 620 (6th Cir. 2001) (quoting *Bailey Farms, Inc. v. NOR-AM Chem. Co.*, 27 F.3d 188, 191 (6th Cir. 1994)).  Moreover, "[i]f the highest court has not spoken, the federal court must ascertain from all available data what the state law is and apply it."  *Clutter*, 646 F.2d at 1153.

## III.  ANALYSIS

At the outset, the Court must resolve a dispute surrounding what State's laws apply in this matter: Ohio state law or Oklahoma state law.  PeopleTec petitions for the application of Oklahoma law, arguing that Ohio law requires courts to apply the laws of the state where a corporation, like STI, was incorporated when deciding whether to pierce the corporate veil.  (Doc. No. 27 at PageID 306.)  As STI was allegedly incorporated in Oklahoma, PeopleTec advocates that to apply Oklahoma law is actually the proper application of Ohio substantive law.  (*Id.*)  Meanwhile, Colon points to a choice of law provision contained in the subcontractor agreement between PeopleTec and STI, which states:

> This Agreement shall be governed by and construed in accordance with the laws of and enforced within the jurisdiction of the State of Ohio, without regard to its principles of conflicts of law.
>
> …

(Doc. No. 28 at PageID 314-15.)  Because the two companies agreed that their disputes would be settled pursuant to Ohio law and without regard for principles of conflicts of law, Colon submits that Ohio veil-piercing law must govern the Court's analysis of his Motion.  (*Id.*)

The Court finds Colon to be correct on this initial front.  Contractual "[c]hoice of law clauses are enforceable in Ohio." *Woodside Mgmt. Co. v. Bruex*, 157 N.E.3d 295, 308 (Ohio Ct. App. 2020) (citing *J.F. v. D.B.*, 848 N.E.2d 873, 878-79 (Ohio Ct. App. 2006)).  When contracting parties settle on a choice of law notwithstanding any conflict of laws among interested States, that choice will generally govern "except where the chosen state has no substantial relationship to the parties or the transaction or when the application of its law would offend a fundamental policy of a state with a materially greater interest." *Greif Packaging, L.L.C. v. Ryder Integrated Logistics, Inc.*, 2010-Ohio-4384, at ¶ 25 (Ohio Ct. App. 2010) (citing *Schulke Radio Prods., Ltd. v. Midwestern Broad. Co.*, 453 N.E.2d 683, 685-86 (Ohio 1983)).

The implication here is that the Court must apply Ohio law to PeopleTec's veil-piercing allegations against Colon.  There would be no need for a dispute if Ohio veil-piercing law was not supposedly in conflict with Oklahoma veil-piercing principles.  In the face of such a conflict, the Parties must be held to the choice of law clause that they agreed upon.  That choice cannot be overridden by the notion that Ohio has no substantial relationship to the Parties or their transaction. The Court can certainly say that neither PeopleTec nor STI is incorporated in Ohio.  Yet, the Court has no information with which to say that the Parties have no substantial relationship to Ohio. What is more, even assuming Oklahoma's materially superior interest in this litigation, PeopleTec

6

has not actually claimed that applying Ohio law with respect to veil-piercing will somehow conflict with a fundamental public policy of Oklahoma.  To do so would require some indicia that Oklahoma is less keen to allow individuals the protection of corporate form, as a matter of policy. Again, PeopleTec has offered no support for such a conclusion and the Court finds none. Consequently, the Court shall apply Ohio veil-piercing law in analyzing Colon's Motion.

Substantively, Colon argues that PeopleTec's veil-piercing allegations against him must be dismissed for two reasons.  (*See* Doc. No. 26 at PageID 297.)  First, Colon contends that PeopleTec has improperly alleged the remedy of veil-piercing as an independent cause of action.  (*Id.* at PageID 300-01.)  Second, Colon suggests that even if PeopleTec had properly alleged veil-piercing, it has only offered naked conclusory assertions, which cannot survive Colon's Motion. (*Id.*)  The Court considers each of Colon's arguments under Ohio law, in turn.

### a.  <u>Piercing the Corporate Veil as a Standalone Claim</u>

Colon first posits that PeopleTec's veil-piercing allegations against him must be dismissed because they have been pled as a standalone claim and Ohio law does not allow "piercing the corporate veil" as an independent cause of action.  (*Id.*)  Applying Oklahoma law, PeopleTec does not refute this assertion.  Rather, PeopleTec assumes that it can plead "piercing the corporate veil" as an independent cause of action and implicitly invites the Court to do the same.  (Doc. No. 27 at PageID 308.)

The Court cannot accept PeopleTec's assumption in this regard.  "Piercing the corporate veil or alter ego liability is a remedy, not an independent cause of action."  *Graham v. City of Lakewood*, 113 N.E.3d 44, 58 (Ohio Ct. App. 2018) (citing *Geier v. Nat'l. GG Indus.*, No. 98-L-172, 1999 WL 1313640, at *3 (Ohio Ct. App. Dec. 23, 1999)).  Therefore, PeopleTec's attempt to pierce STI's corporate veil and reach Colon cannot stand as a cause of action unto itself.

Nevertheless, the Court will not cast aside PeopleTec's veil-piercing allegations on this ground because the substance of the Complaint comports the remedial nature of alter-ego liability. "'[T]he label which a plaintiff applies to a pleading does not determine the nature of the cause of action which he states.'" *Minger v. Green*, 239 F.3d 793, 799 (6th Cir. 2001) (quoting *United States v. Louisville & Nashville R. Co.*, 221 F.2d 698, 701 (6th Cir. 1995)). Instead, the Federal Rules of Civil Procedure call on courts to "probe deeper and examine the substance of the complaint." *Minger,* 239 F.3d at 799. On close examination of PeopleTec's Complaint, the veil-piercing claim against Colon is more aptly read as a prayer for relief. PeopleTec invokes equity and justice—concepts most often reserved for remedies—to hold Colon liable for STI's debts arising from the alleged breach of contract at issue here. (Doc. No. 5 at PageID 128-29.) The Complaint does not vie for the piercing of STI's corporate veil apropos of nothing. When read liberally and construed in PeopleTec's favor, the Complaint only seeks to pierce STI's corporate veil and reach Colon as a function of PeopleTec's underlying breach of contract claim. As such, the Court must continue its analysis to determine whether PeopleTec has sufficiently alleged a veil-piercing theory of liability against Colon, on the merits.

### b. **PeopleTec's Veil-Piercing Theory**

At bottom, corporate law dictates that, "normally, shareholders, officers, and directors are not liable for the debts of the corporation" they represent. *Belvedere Condo. Unit Owners' Ass'n. v. R.E. Roark Cos., Inc.*, 617 N.E.2d 1075, 1085 (Ohio 1993) (citation omitted). Still, "the 'veil' of the corporation can be 'pierced' and individual shareholders held liable for corporate misdeeds when it would be unjust to allow the shareholders to hide behind the fiction of the corporate entity." *Id.* To that end, "[c]ourts will permit individual shareholder liability only if the shareholder is indistinguishable from or the 'alter ego' of the corporation itself." *Id.*

8

By his Motion, Colon argues that PeopleTec has failed to support its veil-piercing allegations here with any nonconclusory factual assertions. (Doc. No. 26 at PageID 301.)  As Colon sees it, PeopleTec has asserted such conclusions as the gross undercapitalization of STI, to demonstrate Colon's misuse of the corporate form. (*Id.*)  But, according to Colon, PeopleTec has raised no facts which would give way to that inference of wrongdoing. (*Id.*)

In Response, PeopleTec contends that it has "alleged more than sufficient facts to support a veil-piercing claim against Colon." (Doc. No. 27 at PageID 308.)  In particular, PeopleTec claims that, because STI allegedly failed to pay PeopleTec's past due invoices, STI must be grossly and suspiciously undercapitalized. (*Id.*)  Moreover, PeopleTec says, because Colon, as STI's CEO, allegedly "strung PeopleTec along with unfulfilled promises of a payment plan …," Colon's malfeasance is necessarily the cause of STI's supposed undercapitalization. (*Id.*)

Originally adopting the reasoning of the Sixth Circuit Court of Appeals, in 1993, the Ohio Supreme Court established a three-part test to determine whether it is appropriate to pierce the corporate veil and hold individual shareholders liable for corporate debts. *See generally Belevdere Condo Unit Owners' Ass'n.*, 617 N.E.2d at 1086 (citing *Bucyrus-Erie Co. v. Gen. Prods. Corp.*, 643 F.2d 413, 418 (6th Cir. 1981)).  In *Belvedere*, the court agreed that "the corporate form may be disregarded when '(1) domination and control over the corporation by those to be held liable is so complete that the corporation has no separate mind, will, or existence of its own; (2) that domination and control was used to commit fraud or wrong or other dishonest or unjust act[;] and (3) injury or unjust loss resulted to the plaintiff from such control and wrong.'" *Id.*  In 2008, the Ohio Supreme Court modified the second prong of this test to require plaintiffs to "demonstrate that the defendant shareholder exercised control over the corporation in such a manner as to commit fraud, an illegal act, or a similarly unlawful act." *Dombroski v. WellPoint, Inc.*, 895

9

N.E.2d 538, 545 (Ohio 2008).  In all, this three-part test reflects the general principle that "[c]ourts have been reluctant to disregard the corporate entity …."  *LeRoux's Billyle Supper Club v. Ma*, 602 N.E.2d 685, 688 (Ohio Ct. App. 1991) (citation and internal quotation marks omitted).

From the allegations of PeopleTec's Complaint, the Court finds that the effort to pierce STI's corporate veil and reach Colon fails at the first prong: control.  Mere "ownership of the stock of a corporation by one party" is "insufficient, in and of itself, to pierce the corporate veil." *Id.* at 421.  Rather, in analyzing the control element of Ohio's veil-piercing test, courts are to consider certain relevant factors, namely:

> (1) grossly inadequate capitalization, (2) failure to observe corporate formalities, (3) insolvency of the debtor corporation at the time the debt is incurred, (4) shareholders holding themselves out as personally liable for certain corporate obligations, (5) diversion of funds or other property of the company property for personal use, (6) absence of corporate records, (7) the fact that the corporation was a mere facade for the operations of the dominant shareholder(s).

*Commodigy OG Vegas Holdings LLC v. ADM Labs*, 417 F. Supp. 3d 912, 926 (N.D. Ohio 2019) (quoting *LeRoux's Billyle Supper Club*, 602 N.E.2d at 689) (formatting adopted).

Notably, at the pleading stage, plaintiffs need not conclusively prove a shareholder's control of a corporation.  *Gold Crest, LLC v. Project Light, LLC*, 525 F. Supp. 3d 826, 848 (N.D. Ohio 2021) (citing *Gill v. Byers Chevrolet LLC*, No. 2:05-cv-982, 2007 WL 3025328, at *5-6 (S.D. Ohio Oct. 15, 2007)).  For example, in *Gold Crest*, the court found that veil-piercing had been sufficiently alleged where plaintiff claimed that the defendant shareholder was "a controlling member and moving, acting conscious force behind the [c]orporate [d]efendants, supported by documentation filed by [shareholder defendant] with the Ohio Secretary of State and attached to the complaint." *Id.* (internal quotation marks omitted).

Here, PeopleTec's Complaint contains a dearth of facts which would allow the Court to infer Colon's complete control of STI, such that the two are indistinguishable.  The suggestion that

10

STI is grossly undercapitalized is simply not supported by the allegations.  The Court assumes as true for the purposes of this Motion that STI failed to pay PeopleTec's past due invoices.  However, that a business has failed to pay a single creditor does not necessarily mean the company is undercapitalized.  It certainly could mean that the company is undercapitalized, but, without additional facts, the likelihood of undercapitalization amounts to no more than a possibility.  Furthermore, the Court cannot infer Colon's complete control of STI from the fact that he communicated unfulfilled promises to PeopleTec.  There is nothing in the record or within the realm of common sense which would make a CEO communicating with his company's business partners about their contracts suspicious or domineering.  To be sure, by PeopleTec's own allegations, Colon did not say that he would present PeopleTec with his own payment plan.  He allegedly reiterated that STI was addressing a plan to pay any past due invoices and that STI was committed to fulfilling its obligations under the subcontractor agreement with PeopleTec.

In essence then, PeopleTec would pierce STI's corporate veil because Colon was the STI representative communicating with PeopleTec when STI committed a breach of contract.  This would allow the corporate veil to be pierced in any breach of contract action where the breaching party communicated through its agents.  Veil-piercing by way of agency is explicitly not the standard and any discovery conducted to shore up PeopleTec's alter-ego theory would likely constitute a fishing expedition.  Hence, PeopleTec has not sufficiently alleged veil-piercing against Colon as a theory of liability and Colon's Motion is, therefore, **GRANTED**.

## IV.  CONCLUSION

Based on the foregoing, the Court **GRANTS** Defendant, Charles A. Colon III, Motion for Judgment on the Pleadings (Doc. No. 26).  Defendant Charles A. Colon III is hereby **DISMISSED WITHOUT PREJUDICE** as a party to this action.

11

**DONE** and **ORDERED** in Dayton, Ohio, this Tuesday, April 21, 2026.

s/Thomas M. Rose

_____
THOMAS M. ROSE
UNITED STATES DISTRICT JUDGE